### *In re* LAU OW BEW.[1]

(*Circuit Court, N. D. California.* September 14, 1891.)

CHINESE RESTRICTION ACT—MERCHANT'S CERTIFICATE OF IDENTITY.
> Under the act of congress of 1882 as amended by that of July 5, 1884, providing that Chinese persons other than laborers, who are about coming to this country, must procure from the government which they are about leaving a certificate of their occupation, all Chinese merchants, whether coming for the first time, or having before lived here and returning after a temporary absence, must, before they can be admitted, procure such certificate.

(*Syllabus by the Court.*)

Application for Writ of *Habeas Corpus*.
*Harvey S. Brown* and *Thos. D. Riordan*, for petitioner.
*Chas. A. Garter*, U. S. Atty., for intervener.

BEATTY, J. The petitioner is a subject of the empire of China, whence he arrived at the port of San Francisco on the 11th day of August, 1891. The master of the vessel on which he sailed having refused to land him, a writ of *habeas corpus* was issued in his behalf, and in answer thereto it is alleged that the cause of his detention upon such vessel is that he had not procured from the government of China the certificate required by the act of congress. From an agreed statement of facts it appears that the petitioner for the last 17 years has been a merchant and a member of a prominent Chinese mercantile firm of Portland, Or., where he has during that time resided; that on September 30, 1890, he went to China, intending shortly to return to this country and to his business, which he did on said 11th day of August, but without procuring from the Chinese government the certificate required by the act named.

The only question for determination is whether a Chinese person, who has been domiciled in this country as a merchant, and temporarily leaving it, can re-enter without such certificate. In consequence of the indefinite legislation and the incompatible adjudications on this subject, it is not one of easy solution. To briefly review both may not be

[1] For appeal to court of appeals, see 47 Fed. Rep. 641; for *certiorari* to supreme court, see 12 Sup. Ct. Rep. 43.

inopportune. It was provided by the treaty of 1868, between this government and that of China, that all Chinese subjects should be permitted freely to come and reside here, and by that of November 17, 1880, by article 1, that the United States might regulate, limit, or suspend the coming here of Chinese laborers; but it was expressly provided that such limitations and suspensions should "apply only to Chinese who may come here as laborers, other classes not being included in the limitations." By article 2, that "Chinese * * * proceeding to the United States as teachers, students, merchants, * * * shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation." And by article 3, that any Chinese then resident here shall be protected in the enjoyment of the same rights enjoyed by the citizens of the most favored of other nations. As to all Chinese merchants, whether resident in the United States or China, it is evident they have, by these treaties, the right to come and go as they will; and if, under the treaties, this government can adopt regulations to govern such coming and going, they must be such as are not inconsistent with the enjoyment of such right. The government has, however, adopted such regulations as is conceded it may, even in violation of its treaties, and has provided by section 6, act of May 6, 1882. (22 St. 60,) "that in order to the faithful execution of articles 1 and 2 of the treaty" of 1880, "every Chinese person other than laborers * * * who shall be about to come to the United States, shall be identified as so entitled * * * by the Chinese government;" that a certificate shall be issued to him, stating, among other things, his "place of residence in China; and such certificate shall be *prima facie* evidence of the facts" stated in it. In re *Low Yam Chow*, 13 Fed. Rep. 605, (decided September 5, 1882,) it was held that Chinese merchants, resident of other countries than China, who were about to come here, were not required to produce such certificate. In the course of the opinion it was stated that the object of requiring such certificate was to furnish the evidence that the Chinese person desiring to come was not a laborer; that to hold that its object was in any way to prevent Chinese merchants from coming "would be to impute to congress a purpose to disregard the stipulations of the second article of the new treaty, that they should be allowed to go and come of their own will and accord;" and that the "government [Chinese] could not be expected to give in its certificate the particulars mentioned of persons resident, some perhaps for many years, out of its jurisdiction." Following this decision, said section 6 was so amended by act of July 5, 1884, (23 St. 116,) that every Chinese person other than a laborer, who is entitled "and who shall be about to come to the United States," shall obtain the required certificate of the government of which he may then be a subject, and from which he is about to come. "The certificate shall state * * * the former and present occupation or profession, when and where and how long pursued, and place of residence. * * * If the person is a merchant, said certificate shall * * * state the

nature, character, and estimated value of the business carried on by him prior to and at the time of his application. The facts shall also be investigated by the representatives of the United States at such place, by whom such certificates shall be *viséd*, and it is further provided that it shall be *prima facie* evidence of the facts in it stated, "and shall be the sole evidence permissible on the part of the person" asking to be admitted. After this change in the law came the decision *In re Ah Ping*, 11 Sawy. 17, 23 Fed. Rep. 329, by the learned judge of this circuit, holding that a Chinese merchant, who temporarily left this country, could return without procuring such certificate. Most forcibly was it argued that the act did not apply to those who had long been domiciled and transacting business here, but only to those merchants who were, for the first time, about to come to this country; that, as to the latter class, the government which they were about leaving would have the facts and *data* from which to make the required certificate; but as to the other class, such foreign government, not knowing the facts, could not make the certificate. It would seem almost impossible, at least it is impracticable, to literally enforce the act without working injustice to those Chinese merchants who have so long resided here as to have lost their identity in China. On such returning to that country temporarily it cannot be known there what their occupation is. It results that either that government must issue the certificate, and our representative there indorse it, without any knowledge of the facts or matters therein stated, or that the merchant, entitled under the laws and treaties to a residence here, is debarred from returning; while the Chinese merchant who has never been here can readily procure the certificate and come. It can scarcely be that the law was designed in its operation to prevent the return of those merchants who had long resided here, and admit those who had never been in this country; and yet such may be the frequent result if the letter of the law is followed. This seems a harsh interpretation of the act, and one that may often operate as a violation of the absolute and distinct provisions of the treaties, whereas both acts of congress referred to, expressly declare their enactment is in pursuance of, and to carry out, such treaties.

In *Chew Heong* v. *U. S.*, 112 U. S. 536, 5 Sup. Ct. Rep. 255, a Chinese laborer, who, by said treaty, being entitled to a residence here, left before the passage of the act, and hence without procuring, on leaving, the certificate required for laborers, and on his attempt to return was refused a landing. While the law required all laborers who had lived here and had left and desired to re-enter to have such certificate, and provided that it should be the only evidence of their right to return, the supreme court held that it was absurd to maintain that those Chinese laborers who left when no certificate was required, could not be admitted upon their return, after the passage of the act, without one, and that the law should be consistently construed, according to its spirit, and not letter, and in such way as to carry out the intent of congress, which was to sustain the treaties, and not to violate them. It should also be noted that the treasury department has generally so construed the act as to permit the return,

without such certificate, of merchants domiciled here who may have been temporarily absent.

If the foregoing authorities and rulings were the only guide, the facts of this case might justify the petitioner's release; but the supreme court, in the very recent case of *Wan Shing* v. *U. S.*, 11 Sup. Ct. Rep. 729, has adopted a contrary view.   In that case the petitioner claimed to have been a merchant in San Francisco, which place he left in 1882 for a temporary residence in China, and returned to San Francisco in 1889, without having procured, before leaving China, such certificate; which the court held, was essential to his admission.   Against the force of this decision it is now urged that what is in it which might affect this case is mere *obiter dictum;* that the only question involved was whether the testimony was sufficient to establish the petitioner's character as a merchant; that, whether he could land without such certificate was not an issue; and that, in so far as this last question was decided, it was without consideration, and more the result of inadvertence than of deliberation.   If such were the fact, in view of the other rulings cited above, this last case might be considered as not a controlling one.   The opinion says the refusal to land the petitioner was based, not upon the acts of 1882 and 1884, but upon that of 1888, which prohibits all Chinese laborers from now coming to the United States, and that "the petitioner, if a laborer, could not be permitted to land.   *   *   *   His right to land, therefore, rested upon his establishing the fact that he was not a laborer within the provisions of the act of October 1, 1888, and that could only have been shown by a certificate of identity, issued under the authority of the Chinese government."   The opinion then proceeds to quote from said section 6, as enacted in 1882 and amended in 1884, especially emphasizing the clause which directs that said certificate "shall be the sole evidence permissible on the part of the person so procuring the same to establish a right of entry into the United States."   It then declares:

"This clause disposes of the case before us.   No certificate was presented by the petitioner, under the statute, showing that he was entitled to enter the United States; nor was any attempt made to account for its absence."

Had the decision concluded here, this last clause would justify the view that such certificate is not always necessary, but, when a sufficient reason appears for its absence, other evidence may be substituted.   But it is further added:

"The evidence offered to show that the petitioner was a merchant was weak and unsatisfactory, but the statute itself does away with the necessity for an investigation by the court as to its sufficiency, for it declares that, while the certificate may be contradicted by the authorities of the United States, and is to be taken by them as only *prima facie* evidence, it shall constitute the sole evidence permissible on the part of the person producing the same to establish his right to enter the United States."

And in the concluding clause of the opinion the court reiterates the same view.   It is true the court did not, at any great length, discuss the direct question involved here, but it certainly has most deliberately and in unequivocal language decided that the certificate defined by the law is abso-

lutely necessary to the admission of any Chinese merchant. There existed in that case two reasons through which the court could have reached its conclusion that the petitioner was not entitled to land, without deciding the direct question that must determine this case: *First*, it clearly appears from the record which was before the supreme court that the evidence was insufficient to establish the petitioner's character as a merchant; and, *second*, it also appears from such record that he had lived but two years in this country and seven in China immediately prior to his attempt to return. It is quite evident that his long residence in China was sufficient, not only for him to have established some business or to have engaged in some occupation there, and to have abandoned what he had here, but also to have enabled the Chinese government to acquire such knowledge of his *status* there, as would enable it to make the required certificate. It may be urged that in any case, when a resident merchant here departs to some other country, although intending to return, if he remains so long in such foreign country as to give him a residence, and for his occupation to become fully known there, the reason why he should procure such certificate is as apparent and important as in the case of one coming for the first time. The fact that the supreme court did not assign either of these reasons as the basis of its judgment, but rested it alone upon the provision of the statute, argues that the court meant what it deliberately and plainly said. I cannot, therefore, view as an *obiter dictum* what appears the vital part of that decision. Even if I entertained a contrary opinion, its announcement would not be justified. It would be an unfortunate practice for the bar, litigants, and the people, should an inferior court declare opinions which it believed in conflict with those of the superior court, and especially when the latter is the highest in the land, and at least the peer of any in the world. My only course is to follow the rulings of that court as I understand them. If I misconstrue them, that or some other appellate court can correct my error.

There is, however, another view to be taken of this law. When a statute is so plain that doubt cannot be entertained that the legislators intended it as it reads, courts should not attempt to attach to it another construction than that plainly intended, but only ambiguous and unconstitutional statutes they may construe and overturn. When this last act was adopted, congress had become familiar with the Chinese question and the legislation concerning it, and must have foreseen the effects of this law. Moreover, when a Chinese subject returns to China, and remains there many years, he should be required, before returning here, to procure the certificate of his occupation there. Seeing the necessity of such a rule in such cases, and the difficulty of fixing any limit of residence in a foreign country which should make it proper to secure such certificate, it seems probable that congress intended the rule to become applicable to all coming here, whether for the first time or otherwise. At all events, the supreme court seems to have adopted this view, and has left it to congress to amend the law if it shall work hardship, as it undoubtedly may in cases like this. In accord, therefore, with what is deemed the ruling of that court, it is now ordered that the writ be denied, and the petitioner be remanded to the empire of China.