## UNITED STATES v. GREENE et al.

### (Circuit Court, W. D. Virginia. July 20, 1908.)

1. TRUSTS—SUIT TO ENFORCE TRUST EX MALEFICIO—BILL OF INTERVENTION.

In a suit by the United States to establish and enforce a trust ex maleficio in certain property alleged to have been purchased with funds embezzled from the government, a bill of intervention, setting up an adverse claim to the property under an agreement between the defendant and intervener, is insufficient, where it does not deny the allegations of the original bill nor allege that the intervener was ignorant of the facts so alleged.

2. CONTRACTS—LEGALITY—AGREEMENT BY PRINCIPAL IN BAIL BOND TO INDEMNIFY SURETY.

The law will not imply an agreement or obligation on the part of the principal is a bail bond in a criminal case to indemnify his surety, and an express agreement for such indemnity by the principal is illegal and void as against public policy and will not be enforced by the courts.

In Equity. On petition for leave to file bill of intervention.

Marion Erwine, Sp. Asst. Atty. Gen., and Thos. L. Moore, Dist. Atty., for the United States.

J. L. McClure, Aubrey Strode, and Horsley, Kemp & Easley, for intervener.

McDOWELL, District Judge. Heretofore a bill in equity was filed by the government against Benj. D. Greene, L. F. Kellogg, and the Norfolk & Western Railway Company. Of the nature of the bill it seems at present only necessary to say that it alleges a trust ex maleficio in favor of the government on some 400 shares of the stock of the railway company, standing in the name of Kellogg, which is alleged to have been purchased for Greene with misappropriated funds belonging to the government. The executrix of Jas. D. Leary asks permission to intervene, and alleges, in brief, that the said Leary became the surety of Greene in bail bond given in a criminal cause, on which default was made and on which judgment has been rendered, and that at the time Leary became surety it was understood between him and Greene and Kellogg that the railway stock should be held by Kellogg as a stakeholder and should be used, if occasion arose, to indemnify Leary. The petition of the administratrix of Jas. D. Leary for leave to file a bill of intervention herein is objected to by the government.

The bill of intervention does not deny the allegations in the original bill to the effect that the Norfolk & Western stock was purchased with funds embezzled from the government, nor does it allege that Leary, at the time of the alleged agreement of indemnity, was innocent of knowledge of the facts which are alleged in the original bill and which impress upon the stock a trust in favor of the government. In this failure of allegation the bill of intervention seems to me to be fatally defective. However, as the pleading may be amended in this respect, it will be necessary to go further.

I find myself unable to determine from the bill whether the drafts-

man is setting up an express agreement that the securities were to be used to indemnify Leary, or a tacit and therefore merely a supposed implied agreement. As uncertainties in pleadings are to be construed against the pleader, we must for the present regard the pleading as alleging a tacit, unexpressed intention, which, but for a rule to be mentioned later, would from the acts done and the circumstances create the implied agreement relied upon. I think it is settled, and counsel seem to concede it, that the law will not imply an obligation on the part of the principal in a bail bond in a criminal case to indemnify his surety. See 3 Am. & Eng. Ency. (2d Ed.) 684; Highmore on Bail, p. 201; U. S. v. Simmons (C. C.) 47 Fed. 575; U. S. v. Ryder, 110 U. S. 729, 4 Sup. Ct. 196, 28 L. Ed. 308. And to the extent stated I regard the last case cited as a binding decision. But here again the bill of intervention may be amended. Although verified, the ambiguity of the pleading may be but the imperfect execution of his task by the draftsman. Assuming, then, that the bill of intervention may be so amended as to unequivocally allege an express agreement between Greene and Leary that the securities deposited with Kellogg were to be used to indemnify Leary, let us consider if there would be shown a right on the part of the proposed intervener to any relief.

The reason why there is no implied obligation on the part of a principal in a bail bond in a criminal case to indemnify his surety is that such a contract is against public policy, in that it "gives the public the security of one person only, instead of two." As applied to an express contract by the principal to indemnify his surety (and as distinguished from a contract by a third person to indemnify the surety), it seems to me that the reason for the rule operates quite as strongly to invalidate such express contract as it does to deny the existence of an implied contract. An express contract by the principal in a bail bond, in a criminal case to indemnify his surety, at least as certainly gives the public the security of only one person, instead of two, as would an implied contract to such effect.

Where the contract of indemnity is made by some third person, and not by the principal, the public still has the security of two persons. While in the case of U. S. v. Ryder, supra, the fact that the indemnitor was not the principal in the bail bond in the case of Chipps v. Hartnoll, 4 B. & S. 414, was not adverted to, this distinction is of importance. See 16 Am. & Eng. Ency. (2d Ed.) 172, where the result of numerous decisions is thus stated:

"In reference to a contract to indemnify a person on account of his becoming bail for a prisoner charged with a criminal offense, the best rule would seem to be that such a contract is illegal as against public policy where it is entered into by the prisoner himself, but valid and enforceable if persons other than the prisoner are the indemnitors."

In 3 Am. & Eng. Ency. (2d Ed.) 684, it is said:

"For obvious reasons of public policy the law will not imply an obligation, nor will it enforce an express agreement, on the part of the principal, to indemnify his bail against the amount of penalty incurred by his default."

Such seems to me to be the necessary conclusion.

In the contention of counsel for the proposing intervener, to the effect that the government cannot rely upon the illegality of the agreement between Greene and Leary, I am unable to see merit. No court will lend its aid to enforce an illegal contract, and here it is the beneficiary under such a contract that moves the court to act. The case of U. S. v. Ryder, supra, is here again incidentally in point. In that case on the objection of Ryder, representing creditors of the defaulting principal in the bail bond, the court refused to subrogate the sureties in the bail bond or to afford them any relief.

As the contract between Greene and Leary, however pleaded, cannot be other than illegal and unenforceable, my conclusion is that leave to file the petition of intervention should be denied.